State, English v. English.

---

The State, John English prosecutor,

v.

Abby L. English.

1. By statute (*Rev. p. 318*), when the parents of minor children live apart, the court may, on petition of either parent, make a decree concerning the custody &c. of such children; the parents' rights, in the absence of misconduct, are deemed equal, and the happiness and welfare of the children determine the question of their custody. A decree of divorce for cruelty granted in this court on the application of a wife who had previously separated from her husband, was reversed by the court of appeals.—*Held*, that her refusal to return to her husband afterwards was not "misconduct" within the meaning of the act.

2. Where, under the above circumstances, a daughter eight years old and a son ten, preferred to remain with their mother, and she was able to provide adequately for their maintenance and education, and was, in all respects, fit to have charge of them, the court refused to change the custody, making reasonable regulations for their father's access.

On *habeas corpus* to obtain the custody of the two children of the prosecutor and respondent.

*Mr. R. Gilchrist* and *Mr. B. Williamson*, for the prosecutor.

*Mr. J. Weart* and *Mr. I. W. Scudder*, for respondent.

THE CHANCELLOR.

By this proceeding the petitioner seeks to recover the possession of the two infant children (one a boy between ten and eleven years old and the other a girl between eight and nine) of himself and the respondent, his wife. The children are now in the custody of the latter. The petitioner does not allege that they are unlawfully restrained of their liberty, and it is conceded that they prefer to remain with their mother, and, if inquired of as to their wishes, would not only declare such preference, but would be unwilling to go with their father.

The parties are living in a state of separation. They were married in 1867. On the 6th of November, 1875, the respondent left her husband's house in Jersey City, and, taking with her the two children, went to her father's house in that place, and she has ever since remained away from her husband with them there. Four days after she left her husband she filed a bill in this court against him for a divorce *a mensa et thoro*, on the ground of extreme cruelty, and praying for alimony and the custody of the children.

NOTE.—The principal cases as to the paramount right of the father to the custody of the children, at common law, in case of separation between him and the mother, and also those cases which recognize the right of the mother in some instances, are collected in 2 *Bish. on Mar. & Div.* §§ 529, 542, 546–549. In addition to those citations the following may be referred to generally, as asserting the mother's preference: *Gregg's Case*, 5 N. Y. Leg. Obs. 265 ; *Dumaine* v. *Gwynne*, 10 Allen 270, 271 ; *Com.* v. *Smith*, 1 Brews. 547.

As to instances where the court has, by statute, a discretion as to the parent to whom such custody may be awarded : *Ibid.*, and, also, *Bennett* v. *Bennett, Deady* 299 ; *Hewitt* v. *Long*, 76 Ill. 399 ; *Symington* v. *Symington, L. R.* (1 Sc. App.) 415. See *Mitchell* v. *McElvin*, 45 Ga. 558 ; *Johnson* v. *Brannaman*, 10 Md. 495.—REP.

State, English *v.* English.

By the final decree in the cause made on the 16th of March, 1876, it was adjudged (*English* v. *English, 12 C. E. Gr. 71*) that the petitioner, the defendant therein, had been guilty of extreme cruelty towards his wife, and a divorce was decreed with provision for setting it aside by mutual consent. *English* v. *English, 12 C. E. Gr. 71.* From this decree the petitioner appealed to the court of last resort, and that court, by its decree (*English* v. *English, 12 C. E. Gr. 579*) on the 16th of July, 1876, decreed that the decree of this court should be reversed in all things, and that the bill of complaint be dismissed, but without prejudice, so that the facts urged in the bill might be used if the case should again be brought before this court. The decree of the appellate tribunal was, on the 4th of August following, made the decree of this court, and the bill was accordingly dismissed without prejudice. Since that time the parties have continued to live separate and the children have remained in the custody of their mother, who, through her father or other relations, has provided wholly for their maintenance and education.

The petitioner, after the making of the decree ·of the court of errors and appeals, wrote two letters to his wife urging her to return to his house with the children. One of them was written on the 31st day of July, 1876, and the other on the 20th of November following. No answer was returned to either. On the 6th of December, 1876, he made an effort to obtain possession of the children by stratagem. Four men went to the respondent's father's house and, having obtained admission, stated that they had an order of this court for the delivery of the children to them for the petitioner. They were unsuccessful. The petitioner not only disclaims responsibility for the false statement made by these persons that they were authorized by this court to take possession of the children, but for the attempt itself. There was no such order, nor any order on the subject. The next day, the petitioner strove to take possession of the boy while the latter was at school, but the effort was frustrated. On the 23d of February following, he forcibly attempted to

take the little girl from her mother's side out of a carriage in which they were, in the street in Jersey City. He says, in his reply to the return, that this occurrence was purely accidental, and all that took place on his part was the result of the excitement of the moment; that his wife and her sister were in the wagon; that he saw his child and was excited and imprudently stopped the wagon; that he did not attempt to take the child, but could have done so if such had been his intention; that no one interfered to prevent him, and that he was impelled by a desire to embrace the child, and accomplished this purpose, and that that was all he did. The evidence is clear that he attempted to remove the child, by great force, from the wagon, a companion of his holding the horse by the head at the time, and that his violence was so great that persons in the vicinity forcibly interfered and protected the child. It is proved that the child's clothes were torn in the struggle, and that her person bore the marks of his violence.

By the act of 1875 (*Rev. p. 318*), it is provided that when the parents of minor children live separately, this court, upon petition of either parent, shall have the same power to make decrees or orders concerning the care, custody, education and maintenance of the children, as concerning children whose parents are divorced, and that in making an order or decree relative to the custody of children pending a controversy between their parents, or in regard to their final possession, the rights of both parties, in the absence of misconduct, shall be held to be equal, and the happiness and welfare of the children shall determine the custody and possession. It is urged that the refusal of the wife in this case to return to her husband, is misconduct within the meaning of the act just quoted, and that she therefore does not stand on an equal footing with her husband. Neither the court of errors and appeals nor this court, it is needless to say, decreed that she should return to her husband. That was beyond their power. What was adjudged was that, under the circumstances, a decree of divorce should be denied.

That was a denial of separate maintenance, but it of course left the wife entirely at liberty to return to her husband or not, as she should see fit.   For more than three years since the decree of the court of errors and appeals, the parties have continued to live separate.   The wife's refusal to return to her husband is not misconduct within the meaning of the act.   By that term the legislature meant such conduct as would deprive the party of a moral right to the custody of his or her children.   Under the construction contended for in this case, a wife who has left her husband for any cause not sufficient to warrant either an absolute or a limited divorce, would be guilty of misconduct and forfeit all right to the custody of her children as between her and her husband.   The statute cannot be construed as applying only to cases in which the parties are living in a state of separation under circumstances which render the separation legally justifiable.   *Bennet* v. *Bennet, 2 Beas. 144; State, Baird pros.* v. *Baird, 3 C. E. Gr. 190; S. C. on Appeal, 4 C. E. Gr. 481; State, Landis pros.* v. *Landis, 10 Vr. 274.*

While the rights of the parents are not to be disregarded, the welfare and happiness of the children are to be the paramount consideration in such cases.   The court would not be at liberty to hold that, though guilty of no misconduct within the meaning of the act, the wife has not equal right, because, in a given case in the opinion of the court, she might be disregarding her duty in refusing to live with her husband.   The wife, in this case, has been guilty of no misconduct, and if the husband be regarded as absolved from all consequences of the conduct complained of in the suit for divorce, then the parties must be considered as having equal rights to the custody of the children.   As before stated, it is admitted that the children prefer to remain with the mother.   For four years she has entirely provided for herself and them, and has provided for their education, and no complaint is made that she has not done her duty towards them well in every particular, or that she has not provided for them adequately.   The petitioner appears to

have contributed nothing whatever to their support or education during that time.   It is admitted that the respondent is in all respects fit to have charge of them.   It is not alleged that she will not be able to provide for them in the future.   The daughter, as a matter of course, would not, under the circumstances, be taken from the mother.   She is only between eight and nine years old.   The welfare and happiness of the son, who is not yet eleven years old, will not, in my judgment, be promoted by taking him from the custody of his mother, but the contrary.

All reasonable regulations for access will be made.   The petitioner specially asks that the children be ordered into the joint custody of himself and his wife at his house.   This, in view of the respondent's unwillingness to live with him, would be to compel her to a resumption of connubial relations under penalty of being deprived of the custody and society of her children.   I cannot regard it as permissible for the court thus to deal with the subject under the circumstances, thus to convert this proceeding to determine the custody of children into a proceeding for the restitution of conjugal rights.   If it seemed best for the children to order them into the possession of the father, whether the mother would return to her husband or not, the constraint upon her to return or lose the society and care of her children would, of course, as a result, be entirely legitimate.   But, dealing with these parties as of equal right, and considering the welfare and happiness of the children as of paramount concern, I am constrained to refuse to change the custody.   The father has not in his household the means of taking care of the children as their mother would care for them.   He has no one who could supply the want of a mother's care.   No stranger could do it.